# UNITED STATES BANKRUPTCY COURT 11
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | | |
|---|---|---|---|
| IN RE: | CHARLIE V. LANDY and | § | CASE NO. 03-54498C |
| | PATRICIA A. LANDY, | § | |
| | | § | |
| | **Debtors** | § | CHAPTER 13 |

**\* \* \* \* \* \* \* \* \* \* \* \* \*\***

| | | | |
|---|---|---|---|
| CHARLIE V. LANDY and | § | | |
| PATRICIA A. LANDY, | § | | |
| Complainants, | § | | |
| | § | | |
| VS. | § | ADVERSARY NO. _____ | |
| | § | | |
| COUNTRYWIDE HOME LOANS, INC., | § | | |
| AS SERVICER FOR | § | | |
| VETERANS ADMINISTRATION, | § | | |
| Defendant. | § | | |

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

Now come CHARLIE V. LANDY and PATRICIA A. LANDY, hereinafter referred to as "Debtors," and file this Complaint for Temporary Restraining Order and Injunction against Countrywide Home Loans, Inc., as Servicer for Veterans Administration (hereinafter "Countrywide"), Defendants, in support of Debtors' Motion to Reconsider Default filed herein on June 20, 2005, and would show that this application is made pursuant to Bankruptcy Rules 7001(7), 7065 and F. R. Civ. P. 65, and in support thereof respectfully represent the following:

I.

Debtors filed a Petition under Chapter 13 of the United States Bankruptcy Code on September 20, 2002. Debtors have been in the Plan since that date and have made their Plan payments.

II.

Because of justifiable reasons, Debtors fell behind on post-petition house payments to their mortgagee, COUNTRYWIDE HOME LOANS, INC., as Servicer for Veterans Administration. An Agreed Order was entered into on or about June 1, 2004, after a Motion for Relief from Automatic Stay was filed on behalf of Countrywide on or about April 13, 2004. All payments on the Agreed Order have been made. The subject property is the home, consisting of a house and lot at 5911 Autumn Lake, San Antonio, Bexar County, Texas, which, at the time of the filing of the Petition, had a current market value of $80,000.00, and, at the time of the filing of this Complaint for a Temporary Restraining Order and Injunction, has an indebtedness against it of approximately $52,000.00.

III.

Debtors have made all of the payments that are additional under the Agreed Order, which were $831.00 for six months, beginning June 15, 2004, and continuing thereon until November 15, 2004. However, it appears that Debtors may have fallen behind on their monthly payments of $1,045.03. Prior to May 11, 2005, Debtors sent a money order or cashier's check to Countrywide in the amount of $2,098.00, which totals at least two payments, which were negotiated on May 11, 2005, and applied to the monthly payment amounts for two months. On that same date, Countrywide sent a letter which was received on May 16, 2005, by Debtors' counsel which advised Debtors that they were in default in the amount of $2,131.86, that this letter was a notice of default, and gave Debtors ten (10) days in which to cure the default. Countrywide also added onto the default $50.00 attorney's fees. Debtors' counsel sent a copy of the check to counsel for Countrywide, and noted that all but about $50.00 had been paid. Countrywide has taken the position that, since Debtors were in default on another month, or months, they are still in default, and that the Notice of Default was proper. In response to this, Debtors filed a Motion to Reconsider Default. After several telephone conferences with Countrywide's counsel, who stated that Countrywide is proceeding to a foreclosure sale on July 5, 2005, at 1:00 o'clock p.m., Posting Number 219, at the Bexar County Courthouse, San Antonio, Texas, Debtors' counsel could not reach any agreement with counsel for Countrywide. Consequently, Debtors' counsel filed this Complaint for Temporary Restraining Order and Injunction in order to allow Debtors a hearing to be able to explain their position as to payments as well as the payment history. Debtors previously filed a Motion to Reconsider Default when Debtors' counsel was under the impression that, that would be sufficient to set a hearing

prior to foreclosure; however, that is not to be the case.

IV.

Debtors' counsel reviewed his file for the Landys in January and February of 2005. Debtors' counsel was under the impression, from communications with counsel at Barrett Burke Wilson Castle Daffin & Frappier, L.L.P., that due to payments made by Mr. Landy in February 2005, Debtors were current through February 2005. Debtors' counsel remembers this because Debtors' counsel sent in a $1,600.00 check early in February 2005, which was rejected by Countrywide as not being sufficient to bring the account contractually current. Subsequent thereto, on February 25, 2005, Debtors' counsel sent cashier's checks in the amounts of $1,600.00 and $923.00, respectively, to Countrywide, which Countrywide accepted and which was represented to Debtors' counsel would bring Debtors current except for one Agreed Order payment of $818.00. It is Debtors' counsel's understanding that this payment was made. In conclusion, Debtors' counsel, relying on representations of counsel for Countrywide, believed as of February 25, 2005, that Debtors were current. This would comport with the earlier position of Countrywide that Countrywide would not accept a payment unless it brought Debtors current. If that is the case, then on May 11, 2005, the *only* payments on which Debtors could have been behind on May 11, 2005, would have been March and April of 2005, with a grace period for May 2005. Debtors made two payments on May 11, 2005, which would have brought them current through April 2005 and would have left one payment for May 2005. The representations made by counsel for Countrywide to Debtors' counsel were passed on to the Debtors. Countrywide takes the position that the Debtors are two (2) payments behind in addition to the two (2) payments that Debtors made on May 11, 2005. Debtors and Debtors' counsel do not agree with that. Even if that is the case, this is not what was communicated to Debtors' counsel at the end of February 2005 after the $1,600.00 and $923.00 cashier's checks payable to Countrywide were sent to them.

Obviously, misunderstandings can occur when payments are being made to mortgagees. The Debtors in this case were relying on representations made to them by the mortgagee. The Debtors have lived in this home since 1980, have made all of their Chapter 13 Plan payments, have made the Agreed Order payments, and were under the impression and belief that they were current through February 2005. Debtors obviously wish to have their day in Court and explain these facts to the Court.

It may be that the application of the payments by Countrywide was not consistent with what was

represented to Debtors' counsel or Debtors. This fact, compounded with the refusal by Countrywide to receive payments, compels a hearing on this matter. Debtors believe they need more time to be able to resolve this matter. They do not want to lose their house and home which they have lived in since 1980, over a misunderstanding or a misapplication or misrepresentation of what they believed to be the truth.

V.

In April 2005, Debtors were in constant contact with a Mrs. Hubbard of Countrywide. Mrs. Hubbard indicated that Countrywide had raised the payments from $818.00 to $1,043.00 per month and apologized to Mr. Landy since Countrywide had under-estimated the escrow amounts needed, and that Mr. Landy had to make these up through future payments. Mr. Landy had sent $818.00 per month directly to Mrs. Hubbard, and she had advanced all of the payments. Suffice it to say that Mr. Landy may have become confused by the payments to be made normally each month and the additional payments under the Agreed Order. It is important to note that Countrywide's own employee indicated that the monthly increment was due to Countrywide's under-estimated escrow for taxes. This compounded the problem of Mr. Landy trying to figure out what he owed. There is more detail to this situation, which can be forthcoming at a hearing. Attached hereto and incorporated herein for all purposes as Exhibit "A" is the Debtor, Charlie V. Landy's, Affidavit.

VI.

Debtors are bringing this Complaint for Temporary Restraining Order and Injunction under Bankruptcy Rule 7065, requesting a Temporary Restraining Order and Preliminary Injunction, and submit to this Bankruptcy Court that the same may be issued on application of a debtor without compliance of Federal Rule of Civil Procedure 65(c), which requires a bond. Debtors request waiver of bond.

VII.

This is an adversary proceeding brought under Bankruptcy Rule 7001 and is a proceeding to obtain an injunction or other equitable relief.

VIII.

This Court has jurisdiction over Debtors, Complainant, and Defendant in that this relates to *In Re: Charlie V. Landy and Patricia A. Landy, Debtors,* Case No. 03-54498C, Chapter 13, United States Bankruptcy Court, Western District of Texas, San Antonio Division. Debtors maintain that this Adversary Proceeding is a core proceeding.

## IX.

### Service

The attorneys for Countrywide have agreed to accept service on behalf of Countrywide and have requested the faxing of this Complaint for Temporary Restraining Order and Summons to them at their offices, as follows: Barrett Burke Wilson Castle Daffin & Frappier, L.L.P., facsimile number (713) 621-8583, Attention: Ms. Carol Ayers and Rick Brady.

Complainant Debtors request that this Court restrain Countrywide, its attorney, Mr. Marty Lacotoure, and any other of its servants or agents, from foreclosing or selling the house and lot owned by Debtors, located at 5911 Autumn Lake, San Antonio, Bexar County, Texas, specifically, on July 5, 2005, and to further restrain them from conveying, foreclosing, or transferring said property to any other third party until further orders of this Court.

1.      Complainant Debtors will prevail on suit on Motion for Reconsideration of Default.  It is probable that Complainant Debtors will prevail on their Motion for Reconsideration of Default and that the amount in default stated in the May 11, 2005, Notice of Default was paid on that date or was substantially paid so as to vitiate the legal effect of said notice.  In other words, it is probable that Complainant Debtors will show that the particular default was cured, and/or was caused by defendant's actions.

2.      Complainant Debtors will show that harm is imminent to Complainant Debtors.  If Complainant Debtors are not granted this Complaint, harm is imminent to Debtors because Debtors cannot replace their house and lot at 5911 Autumn Lake, San Antonio, Bexar County, Texas, which is their home, if it is sole under foreclosure sale.  It is unique to Debtors and cannot be replaced if sold at foreclosure sale.

3.      Harm will be irreparable to Complainant Debtors.  The harm that will result if a Temporary Restraining Order is not issued is irreparable because, since Debtors are in a Chapter 13, they will be unable to find and/or purchase another home, and such foreclosure would place the Complainant Debtors in a position of being unable to obtain another residence or home in which to live.  The inability of the Complainant Debtors to replace such home would cause irreparable injury to Complainant Debtors.

4.      Complainant Debtors have no adequate remedy at law.  Complainant Debtors have no adequate remedy at law because the total damages that they will have suffered from these actions are incalculable, primarily, the inability to go out and purchase another home.  Complainant Debtors, while in

a Chapter 13, would be in a very difficult position to purchase another home.

5.        There is insufficient time for a hearing prior to the foreclosure date of Tuesday, July 5, 2005. Although there is insufficient time for a hearing on Complainants' Complaint for Temporary Restraining Order and Injunction, Complainants have contacted Countrywide's counsel, and Countrywide does oppose this Complaint for Temporary Restraining Order. Complainant Debtors request that an Order be entered, regardless, and a date for a temporary injunction hearing contemporaneously with the Motion to Reconsider Default hearing be held.

6.        Complainants would show that the granting of injunctive relief would not adversely affect public policy or public interest.

7.        Further, Complainants would show that when balancing the hardships, Defendant Countrywide will only suffer a time restraint relative to its remedy if injunctive relief is granted, while the Complainants will lose their home permanently if injunctive relief is not granted.

## X.

### Bond

Complainant Debtors are requesting that the Bankruptcy Court issue its Temporary Restraining Order pursuant to Bankruptcy Rule 7065, waiving bond for the Debtors, and not require a bond as required by Federal Rules of Civil Procedure 65(c).

## XI.

### Request for Temporary Injunction

Complainant Debtors ask the Court to set their Complaint for Temporary Restraining Order for hearing, and, after hearing the Complaint, issue a Temporary Injunction against the Defendant.

## XI.

### Request for Permanent Injunction

Complainant Debtors ask the Court to set their Complaint for Temporary Restraining Order and Injunction for hearing for a full trial on the issues in Complainants' Complaint, and that, after hearing, issue a Permanent Injunction against Defendant Countrywide.

### PRAYER

For these reasons, Complainant Debtors ask the Court to restrain Countrywide Home Loans, Inc., as Servicer for Veterans Administration, Barrett Burke Wilson Castle Daffin & Frappier, L.L.P., and its

agents and employees, Countrywide's agents, employees, and attorneys, Marty Lacotoure as its agent, and any other servants and any other third parties retained by them or under their control, agency, or direction, from foreclosing on the house and lot owned by the Debtors, located at 5911 Autumn Lake, San Antonio, Bexar County, Texas, which has been set for foreclosure on Tuesday, July 5, 2005, at 1:00 p.m., Posting Number 219, Bexar County Courthouse, San Antonio, Bexar County, Texas.

Respectfully submitted,

Law Office of Charles J. Bondurant
11825 IH-10 West, Suite 202
San Antonio, Texas 78230
Tel:  (210) 690-2700; Fax: (210) 691-2862


By: /s/ Charles J. Bondurant
    Charles J. Bondurant
    State Bar No. 02590600
ATTORNEY FOR
COMPLAINANT DEBTOR

# CERTIFICATE OF SERVICE

The undersigned Attorney for Debtor certifies that a true and correct copy of the above and foregoing Complaint for Temporary Restraining Order and Injunction and Summons was sent by facsimile transmission and mailed by United States first-class mail to Rick Brady and Carol Ayers at Barrett Burke Wilson Castle Daffin & Frappier, L.L.P., 1900 St. James Place, Suite 500, Houston, Texas 77056, at (713) 621-8583, and to the following persons by United States first-class mail, on this the 30th day of June, 2005:

Marion A. Olson, Jr.
Chapter 13 Trustee
1020 NE Loop 410, Ste 800
San Antonio, Texas 78209

United States Trustee
P.O. Box 1539
San Antonio, Texas 78295-1539

Charlie V. and Patricia A. Landy
5911 Autumn Lake
San Antonio, Texas 78222

/s/ Charles J. Bondurant
Charles J. Bondurant

# AFFIDAVIT OF CHARLIE V. LANDY

STATE OF TEXAS           §
                         §
COUNTY OF BEXAR          §


BEFORE ME, the undersigned authority, on this day personally appeared CHARLIE V. LANDY who, being by me first duly sworn, on his oath, deposed and said as follows:

"My name is CHARLIE V. LANDY. I am over the age of 18 years, am not disqualified by law from making this affidavit, am of sound mind, am capable of making this affidavit, and am personally acquainted with the facts stated herein.

"I am the Debtor in the above-entitled and numbered cause and the Complainant Debtor in the adversary proceeding brought by me and my wife, as Debtors, against Countrywide Home Loans, Inc., as Servicer for Veterans Administration (hereinafter, "Countrywide"). I filed a Chapter 13 on September 20, 2002. I have attempted to make all of the payments under the Plan and have. At one time in the Plan, I had a child in college who was graduating in December who was requiring fees for tuition, which prompted me to request a moratorium to help my child. This moratorium was granted, and it gave me great relief as far as my Chapter 13 payments were concerned.

"I was somewhat confused as to the extent of the moratorium, and because of that, I fell behind on my house payments and therefore entered into an Agreed Order with Countrywide by which the post-petition arrearages could be paid. Ultimately, all of the payments under the Agreed Order were paid by me. During that particular time, I attempted to make payments and, at various times, Countrywide would not accept my payments because they contended they were not sufficient to bring the payments contractually current. I object to this because I was paying what I had, when I had it, and by their refusing to accept my payments, it jeopardized my ability to get Countrywide paid and was confusing as to the Agreed Order payments *and* the house payments.

"On February 9, 2005, my attorney, Charles J. Bondurant, received a letter from Countrywide refusing payment of $1,600.00. Subsequent to that, a $1,600.00 check in the form of a cashier's check was sent in to Countrywide by my attorney. Subsequently, on February 25, 2005, my attorney, Charles J. Bondurant, sent the initial $1,600.00 cashier's check along with a $923.00 cashier's check payable to Countrywide, both of which were mailed to Mr. Keith Morris, in care of Barrett Burke Wilson Castle Daffin & Frappier, L.L.P. At that point, I thought I was current except for the $818.00 February 2005 payment pursuant to the Agreed Order. These checks were forwarded to Countrywide. These checks should have brought me current through February 2005. My attorney did speak to Mr. Morris, and I was under the impression that I was current through February 2005.

## EXHIBIT "A"

"With this in mind, I made a payment of $2,902.00 on May 11, 2005, which should have brought me current through March and April of 2005, based on the representations made to my attorney that I was current through February 2005, pursuant to the $2,523.00 payment that was sent in by my attorney on February 25, 2005.

"Even if this is incorrect in that the payments were not applied correctly, the information that my attorney and I received was that I was current through February 2005, which would indicate that my payment in May 2005 would have brought me current through April 2005.

"The position Countrywide is taking is that on May 11, 2005, when I sent in a payment of $2,902.00, is that I was behind for February, March, April, and May of 2005–four months. This is incorrect, based on the representations made by Barrett Burke Wilson Castle Daffin & Frappier, L.L.P.'s attorney, Mr. Keith Morris, to my attorney, Mr. Bondurant. I am not accusing anyone of trying to fool me; I am merely saying that my attorney and I were under the impression that I was more current than Countrywide apparently believes that I was.

"I have been in the Plan for three (3) years and have made all of my Plan payments. I believe that this type of misunderstanding warrants time by which I can rectify this situation. Certainly, there has been some confusion on the part of Countrywide and perhaps its attorneys in communicating to me what I owed in late February 2005. Some of the confusion may be my fault; some of it may be their fault. In all honesty, I believed that during the moratorium, my house payments were suspended, as well. This created some confusion for me. In any event, I certainly believe that a Temporary Restraining Order should be issued so that I am given the opportunity to have a hearing on the merits of my understanding of what was happening and on the merits of the case so that I can rectify the situation. My attorney has been told by Countrywide's attorneys that unless four (4) payments are made before Tuesday, July 5, 2005, they probably will not accept them. I do have two (2) payments which, according to my calculations, would bring me current. I believe that if there is a hearing that sets out what my understanding is and what was communicated to my attorney and me, an amicable and agreeable arrangement can be made for my wife and me to remain in our home and for Countrywide to be paid.

"I have had my attorney file a Motion to Reconsider Default so that the merits of my case can be heard.

"In addition, I did enter into an Agreed Order with Countrywide on some post-petition payments, but I have paid all of the payments under the Agreed Order: $831.00 per month for six (6) months. During that time, except for the moratorium, I have made all of my Plan payments under the Chapter 13 Plan.

"I would like for the Bankruptcy Court to know that I purchased this home in 1980. It has a value of approximately $80,000.00, and the balance on the mortgage is approximately $52,000.00. I have considerable equity in this property.

"In addition to all of the above, I spoke with a Mrs. Hubbard on April 15, 2005. She apologized to me on behalf of Countrywide because they had failed to calculate the escrow correctly and had under-

estimated taxes.  After the new escrow analysis, instead of an escrow payment of $283.52 per month, it increased to $472.34 rather than $283.52.  In Mrs. Hubbard's letter, she stated that there was no escrow included in the Chapter 13 Bankruptcy Proof of Claim.  Consequently, my monthly payments went up a considerable amount, precipitously.

"I am aware that Countrywide, through its attorneys, has sent calculations of crediting, but those calculations are not necessarily what I understood Countrywide to have done.  I am not trying to get out of my debt.  I just want to understand my debt, pay it, and remain in my home.

"In conclusion, I believe that the Notice of Default on May 11, 2005, is incorrect, and the most I was behind was one (1) payment or no payments.  I want to have an opportunity to be able to have the Bankruptcy Court hear my side of the story.

"I am willing to do what is necessary to keep my house and home.  I have done my best to keep up with the Chapter 13 Plan and will attempt to cure any arrearages on this.  I know that my wife and I will suffer imminent and irreparable harm if my house is foreclosed upon."


/s/ Charlie V. Landy
CHARLIE V. LANDY, Affiant


SUBSCRIBED and SWORN TO before me by Charlie V. Landy on this the 29th day of June, 2005, to certify which, witness my hand and official seal of office.


/s/ Adrienne L. Carabetta
NOTARY PUBLIC, STATE OF TEXAS

**Adrienne L. Carabetta**
**Notary Public, State of Texas**
**My Commission Expires**
**March 24, 2009**


**UNITED STATES BANKRUPTCY COURT 1111**

IN RE:      **CHARLIE V. LANDY and**   §                      **CASE NO. 03-54498C**
              **PATRICIA A. LANDY,**     §
                                        §

              **Debtors**                  §                      **CHAPTER 13**

                        **\* \* \* \* \* \* \* \* \* \* \* \* \*\***

**CHARLIE V. LANDY and**           §
**PATRICIA A. LANDY,**             §
      **Complainants,**             §
                                  §
**VS.**                                §        **ADVERSARY NO. _____**
                                §
**COUNTRYWIDE HOME LOANS, INC.,**  §
**AS SERVICER FOR**              §
**VETERANS ADMINISTRATION,**     §
        **Defendant.**              §

## SUMMONS IN AN ADVERSARY PROCEEDING

**YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 10 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.**

**Address of the Clerk :US BANKRUPTCY COURT CLERK . PO BOX 1439 SAN ANTONIO, TEXAS 78295**

**At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.**

**The plaintiff's attorney address is Charles J. Bondurant 11825 IH 10 West Suite 202, San Antonio, Texas 78230.**

**If you make a motion your time to answer is governed by Fed. R. Bankr. P. 7012.**

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF**

**DEMANDED IN THE COMPLAINT.**


_____

**CLERK OF THE BANKRUPTCY COURT**

**BY:**_____

      **DEPUTY CLERK**

**DATE:**_____


**CERTIFICATE OF SERVICE**


**I,**_____**, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I certify that the service of this summons and a copy of the complaint was made**_____**by:**


____ **Mail Service: regular, first class United States mail, postage fully pre-paid, addressed to:**


     **Under penalty of perjury, I declare that the foregoing is true and correct.**


_____           _____

**DATE**                                          **SIGNATURE**


**PRINT NAME**

_____

**BUSINESS ADDRESS**


_____